IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| VOTO LATINO; ROSALINDA RAMOS ABUABARA; AKILAH BACY; ORLANDO FLORES; MARILENA GARZA; CECILIA GONZALES; AGUSTIN LOREDO; CINIA MONTOYA; ANA RAMÓN; JANA LYNNE SANCHEZ; JERRY SHAFER; DEBBIE LYNN SOLIE; ANGEL ULLOA; AND MARY URIBE,<br><br>*Plaintiffs,*<br>V.<br><br>JOHN SCOTT, in his official capacity as Texas Secretary of State; GREGORY WAYNE ABBOTT, in his official capacity as the Governor of Texas,<br><br>*Defendants.* | Case No. 1:21-cv-00965 |

**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of Contents ........................................................................................................................... ii
Index of Authorities ..................................................................................................................... iii
Introduction .................................................................................................................................... 1
Standard .......................................................................................................................................... 1
Argument ........................................................................................................................................ 1
I.      Plaintiffs Have Not Plausibly Alleged Standing ............................................................. 1
           A.  Voto Latino Lacks Standing ................................................................................ 2
                 1.    Voto Latino Does Not Have Associational Standing ......................... 2
                 2.    Voto Latino Does Not Have Organizational Standing ....................... 5
           B.  The Individual Plaintiffs Also Lack Standing .................................................... 7
II.     Plaintiffs Do Not Have a Private Cause of Action ........................................................ 9
Conclusion ................................................................................................................................... 12

# INDEX OF AUTHORITIES

Page(s)

**Cases**

*Ala. Legislative Black Caucus v. Alabama,*
   575 U.S. 254 (2015) ................................................................................................................. 8

*Alexander v. Sandoval,*
   532 U.S. 275 (2001) ..................................................................................................... 10, 11, 12

*Allen v. State Board of Elections,*
   393 U.S. 544 (1969) ............................................................................................................... 12

*Alsbrook v. City of Maumelle,*
   184 F.3d 999 (8th Cir. 1999) (en banc) ................................................................................. 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................................. 1

*Ass'n for Retarded Citizens of Dall. v. Dall. Cty. Mental Health & Retardation Ctr. Bd. of Trs.,*
   19 F.3d 241 (5th Cir. 1994) ................................................................................................. 4, 6

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler,*
   178 F.3d 350 (5th Cir. 1999) ................................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................................. 1

*Bethune-Hill v. Va. State Bd. of Elections,*
   137 S. Ct. 788 (2017) .............................................................................................................. 8

*Brecht v. Abrahamson,*
   507 U.S. 619 (1993) ................................................................................................................. 9

*Brnovich v. Democratic Nat'l Comm.,*
   141 S. Ct. 2321 (2021) (Gorsuch, J., concurring) ................................................................. 9

*California v. Sierra Club,*
   451 U.S. 287 (1981) ............................................................................................................... 12

*City of Mobile v. Bolden,*
   446 U.S. 55 (1980) ................................................................................................................... 9

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ................................................................................................................. 6

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................................................................. 1

*Conservation Force v. Delta Air Lines, Inc.*,
  190 F. Supp. 3d 606 (N.D. Tex. 2016) ............................................................................ 11, 12

*Conservation Force v. Delta Air Lines, Inc.*,
  682 F. App'x 310 (5th Cir. 2017) (per curiam) ..................................................................... 11

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004) ................................................................................................................ 9

*Ctr. for Biological Diversity v. EPA*,
  937 F.3d 533 (5th Cir. 2019) .................................................................................................. 4

*Delancey v. City of Austin*,
  570 F.3d 590 (5th Cir. 2009) ................................................................................................ 12

*DiMaio v. Democratic Nat'l Comm.*,
  520 F.3d 1299 (11th Cir. 2008) (per curiam) ......................................................................... 7

*Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors*,
  522 F.3d 796 (7th Cir. 2008) .................................................................................................. 4

*Draper v. Healey*,
  827 F.3d 1 (1st Cir. 2017) (Souter, J.) .................................................................................... 4

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
  11 F.4th 68 (2d Cir. 2021) ....................................................................................................... 5

*Fair Elections Ohio v. Husted*,
  770 F.3d 456 (6th Cir. 2014) .................................................................................................. 6

*Friends of the Earth, Inc. v. Chevron Chem. Co.*,
  129 F.3d 826 (5th Cir. 1997) .................................................................................................. 3

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
  695 F.3d 330 (5th Cir. 2012) ............................................................................................. 3, 4

*Ga. Republican Party v. SEC*,
  888 F.3d 1198 (11th Cir. 2018) .............................................................................................. 4

*Gallagher v. N.Y. State Bd. of Elections*,
  496 F. Supp. 3d 842 (S.D.N.Y. 2020) ..................................................................................... 7

*Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*,
  17 F. Supp. 3d 599 (S.D. Tex. 2014) (Costa, J.) ..................................................................... 7

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ............................................................................................*passim*

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) ......................................................................................................... 11

*Hancock Cty. Bd. of Supervisors v. Ruhr*,
   487 F. App'x 189 (5th Cir. 2012) ..................................................................................... 5

*Henderson v. Stalder*,
   287 F.3d 374 (5th Cir. 2002) ............................................................................................ 5

*Hunt v. Wash. St. Apple Adver. Comm'n*,
   432 U.S. 333 (1977) ...................................................................................................... 2, 3

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) .................................................................................................. 10, 12

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ......................................................................................... 6

*League of Women Voters of Mich. v. Johnson*,
   No. 2:17-cv-14148, 2018 WL 10483517 (E.D. Mich. May 16, 2018) ................................ 8

*Logan v. U.S. Bank Nat'l Ass'n*,
   722 F.3d 1163 (9th Cir. 2013) ....................................................................................... 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................................... 5

*Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*,
   499 F.3d 803 (8th Cir. 2007) ............................................................................................ 3

*Morse v. Republican Party of Va.*,
   517 U.S. 186 (1996) ......................................................................................................... 11

*N.E. Ohio Coal. for Homeless v. Blackwell*,
   467 F.3d 999 (6th Cir. 2006) ............................................................................................ 3

*NAACP v. City of Kyle*,
   626 F.3d 233 (5th Cir. 2010) ........................................................................................ 4, 5

*Nat'l Treas. Emps. Union v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996) ....................................................................................... 6

*Nestle Ice Cream Co. v. NLRB*,
   46 F.3d 578 (6th Cir. 1995) .............................................................................................. 3

*Rodriguez v. Popular Democratic Party*,
   457 U.S. 1 (1982) ........................................................................................................... 11

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) .......................................................................................................... 6

*Sinkfield v. Kelley*,
   531 U.S. 28 (2000) (per curiam) ................................................................................... 8

*Stokes v. Sw. Airlines*,
   887 F.3d 199 (5th Cir. 2018) .................................................................................. 10, 12

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................................................ 4

*Tex. Indigenous Council v. Simpkins*,
   No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) ............................... 3

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979) ...................................................................................................... 12

*United States v. Hays*,
   515 U.S. 737 (1995) ........................................................................................................ 8

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................................................ 2

*Yazzie v. Hobbs*,
   977 F.3d 964 (9th Cir. 2020) (per curiam) ................................................................ 7

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ........................................................................................... 10, 12

*Zimmerman v. City of Austin*,
   881 F.3d 378 (5th Cir. 2018) ........................................................................................ 5

**Statutes**

52 U.S.C.
   § 10301(a) ............................................................................................................... 10, 11
   § 10308 ............................................................................................................................ 11

**INTRODUCTION**

The Court should dismiss this case because Plaintiffs do not have standing or a private cause of action. Plaintiffs attempt to challenge Texas congressional districts without identifying voters who are allegedly injured by those districts. That puts the cart before the horse. Courts evaluate the lawfulness of congressional districts only when necessary to redress an injury to an identified voter. Voto Latino claims associational standing, despite failing to allege that it has any members at all, much less members injured by the new congressional map. And the Individual Plaintiffs do not allege an intent to vote in any future election or even that they reside in a number of the districts that Plaintiffs purport to challenge.

Moreover, Plaintiffs' sole claim arises under Section 2 of the Voting Right Act, but that statute empowers the Attorney General, not these Plaintiffs, to file suit. If Plaintiffs like these are to bring claims like this, they must first turn to Congress, not the courts.

**STANDARD**

A plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**ARGUMENT**

I. **Plaintiffs Have Not Plausibly Alleged Standing**

This Court should dismiss for lack of subject-matter jurisdiction because Plaintiffs do not have

1

Article III standing. Voto Latino has not plausibly alleged facts supporting associational or organizational standing. The Individual Plaintiffs have not alleged that they intend to vote. But even if some plaintiff had standing, it would permit only district-specific challenges, not a statewide challenge to the map as a whole.

### A.   Voto Latino Lacks Standing

Voto Latino arguably puts forward two theories of standing, but neither allows it to bring this suit. First, it lacks associational standing on behalf of its members because it has not plausibly alleged that it has any members or identified any purported members, much less ones facing a certainly impending injury in fact. Second, Voto Latino lacks organizational standing because alleged setbacks to an organization's abstract social interests do not concretely injure that organization.

#### 1.   Voto Latino Does Not Have Associational Standing

Voto Latino has not plausibly alleged associational standing. Although "an association may have standing solely as the representative of its members," this doctrine "does not eliminate or attenuate the constitutional requirement of a case or controversy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Accordingly, courts apply a three-part test to determine if a plaintiff has associational standing: "(a) [the association's] members would otherwise have standing to sue in their own right; (b) the interests [the association] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

As a threshold matter, Voto Latino has not established that it has members at all. It does not claim to have members in its complaint. *See* ECF 1 ¶¶ 14–15. Indeed, Voto Latino tells the IRS that it does not "have members," much less "members . . . who ha[ve] the power to elect or appoint one or

more members of the governing body."[1]

To be sure, Voto Latino says it represents the interests of "its supporters and constituents," but as far as the complaint reveals, those are just people Voto Latino claims to help. ECF 1 ¶ 15. The beneficiaries of a plaintiff's services do not qualify as "members" for purposes of associational standing. "[S]tanding on behalf of the group served by [an] organization" would be "a form of representational standing never recognized by any court." *N.E. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1010 n.4 (6th Cir. 2006).

Voto Latino does not allege any facts showing its "supporters and constituents" are equivalent to members. ECF 1 ¶ 15. The question is not whether Voto Latino considers a group "to be the core of its constituency," *id.* ¶ 14, but whether the individuals Voto Latino claims to represent "possess all of the indicia of membership in an organization." *Hunt*, 432 U.S. at 344. Under that inquiry, individuals may support associational standing only if they "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir. 2012) (citing *Hunt*, 432 at 344-45); *see also Tex. Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014).

Courts "apply the *Hunt* 'indicia of membership' test" when determining whether an organization "has 'members' whose interests it can represent in federal court." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997); *see, e.g.*, *Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 810 (8th Cir. 2007); *Nestle Ice Cream Co. v. NLRB*, 46 F.3d 578, 586 (6th Cir. 1995). The organization must "provide[] the means by which [its purported members] express their collective views and protect their collective interests." *Hunt*, 432 U.S. at 345. If the individuals it claims

---

[1] Voto Latino Inc., Form 990: Return of Organization Exempt from Income Tax (2019), https://apps.irs.gov/pub/epostcard/cor/201350252_201912_990_2021040517881084.pdf (answering "No" to questions 6 and 7a in Part VI.A); Voto Latino Action Fund, IRS Form 990: Return of Organization Exempt from Income Tax (2018), https://apps.irs.gov/pub/epostcard/cor/455477218_201812_990O_2020062217797869.pdf (same).

as members do not "participate in and guide the organization's efforts," then the plaintiff organization lacks associational standing. *Ass'n for Retarded Citizens of Dall. v. Dall. Cty. Mental Health & Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). Voto Latino does not contend that its "supporters and constituents" meet these criteria.

Even if Voto Latino did have members, it still could not establish associational standing unless one of those members independently had Article III standing. *See Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019); *Funeral Consumers All.*, 695 F.3d at 344 n.9. "Foremost among [the Article III standing] requirements is injury in fact." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). But Voto Latino has failed to "identify members who have suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *see NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010) (requiring an injury to "a specific member"). When a complaint fails to identify members, associational-standing claims should be dismissed. *See, e.g., Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018) (dismissing claim where the only member identified failed to allege that he was injured by the challenged regulation); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing claim where the plaintiff organization had only "submitted an affidavit asserting that many of its members asked it to take legal action" but did not identify any injured member with particularity); *Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing claim where the plaintiff organization had failed to allege that its standing was derived from any identified individual that had suffered the requisite harm).

In this case, Voto Latino has not identified any members at all, much less injured ones. The complaint identifies the Individual Plaintiffs, but it does not allege that they are members of Voto Latino. *See* ECF 1 ¶¶ 16–28. Even if they were members of Voto Latino, the Individual Plaintiffs could not support associational standing because they lack standing for the reasons explained below.

4

*See infra* Part I.B.[2]

### 2. Voto Latino Does Not Have Organizational Standing

Voto Latino also lacks organizational standing. As an initial matter, it is not clear whether Voto Latino intends to rely on organizational standing. A plaintiff invoking organizational standing brings suit "on its own behalf," *Henderson v. Stalder*, 287 F.3d 374, 381 (5th Cir. 2002), but Voto Latino says that it brings suit "on behalf of its supporters and constituents." ECF 1 ¶ 15.

One conclusory sentence in the complaint arguably addresses organizational standing, but it cannot support standing in this case:

> Voto Latino will now have to expend and divert additional funds and resources that it would otherwise spend on its efforts to accomplish its mission in other states or its own registration efforts in Texas to combat Senate Bill 6's effects on its core constituency, in particular to combat the dilution of the voting power of Latinx voters in Texas.

ECF 1 ¶ 15. Voto Latino does not contend that it is "the object of the government action or inaction [it] challenges," so standing is "substantially more difficult to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (quotation omitted). Instead, Voto Latino argues that the map's effects on third parties force it "to expend and divert" resources from other programs and activities. ECF 1 ¶ 15.

Although the diversion of resources can constitute a requisite injury under certain circumstances, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. An organization's decision to divert resources "must . . . be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). In other words, a diversion of resources is cognizable

---

[2] An unpublished Fifth Circuit opinion once noted that the panel was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint," *Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), but the precedent cited above holds exactly that. In any event, even if the Entity Plaintiffs did not have to "name names," they would at least have to include "more specific" allegations "identifying members who have suffered the requisite harm." *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 75–76 (2d Cir. 2021).

only if the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Thus, a diversion-of-resources injury is cognizable only if the underlying injury the plaintiff seeks to avoid would have been both cognizable and certainly impending. Courts do not allow a plaintiff to "bootstrap standing by expending its resources in response to actions of another." *Ass'n for Retarded Citizens of Dall.*, 19 F.3d at 244. Otherwise, Plaintiffs could "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013).

Here, Voto Latino claims it will divert resources "to combat the dilution of the voting power of Latinx voters in Texas." ECF 1 ¶ 15. But any alleged vote-dilution injury belongs to individual voters, not Voto Latino. The Supreme Court has "long recognized that a person's right to vote is 'individual and personal in nature.'" *Gill*, 138 S. Ct. at 1929 (2018).

Perhaps Voto Latino, like many groups and individuals, would prefer that third parties' votes not be diluted, but "[f]rustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treas. Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (quotation omitted). No matter how laudable an organization's goal, it cannot establish "standing simply on the basis of that goal." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976). Thus, "a showing that an organization's mission is in direct conflict with a defendant's conduct is insufficient, in and of itself, to confer standing on the organization to sue on its own behalf." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 361 n.7 (5th Cir. 1999).

Voto Latino's interest in maximizing a particular group's "voting power," ECF 1 ¶ 15, is akin to a "generalized partisan preference[]," which cannot support Article III standing. *Gill*, 138 S. Ct. at 1933; *see also Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014) (holding that the "abstract social interest in maximizing voter turnout . . . cannot confer Article III standing"). Voto Latino does

not allege "how the allegedly discriminatory . . . practice is going to impair [its] activities." *Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 613 (S.D. Tex. 2014) (Costa, J.). That is because a redistricting map cannot impair Voto Latino's activities. Regardless of the map used, Voto Latino remains equally free "to register and mobilize . . . Latinx voters." ECF 1 ¶ 14.

### B.     The Individual Plaintiffs Also Lack Standing

The Individual Plaintiffs also do not allege facts to establish standing. *See* ECF 1 ¶¶ 16–28. They rely on a vote-dilution theory of injury, but they do not allege that they intend to vote in 2022 (or any other future election). Vote dilution, by definition, injures only those who vote. It "arises from the particular composition of the voter's own district, which causes his vote . . . to carry less weight than it would carry in another, hypothetical district." *Gill*, 138 S. Ct. at 1931.

The Individual Plaintiffs allege that they are registered to vote, *see id.* ¶¶ 16–28, but a plaintiff's allegation that he is "a registered voter" does not suffice. *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1302 (11th Cir. 2008) (per curiam). A "complaint undeniably fails the test for constitutional standing" when the plaintiff "never allege[s] that he actually voted, nor even so much as suggested that he intended to vote in," the election at issue. *Id.*; *see also Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020) (per curiam) (dismissing for lack of standing because "any allegation or showing as to, at a bare minimum, whether any of the plaintiffs intend to vote in this general election" was "missing"); *Gallagher v. N.Y. State Bd. of Elections*, 496 F. Supp. 3d 842, 850 (S.D.N.Y. 2020) (holding the plaintiffs lacked standing to challenge a deadline for voting by mail when "none of them has alleged that he or she intends to cast an absentee ballot *by mail*").

Even if the Individual Plaintiffs had plausibly alleged an intent to vote, they would still lack standing to challenge many of the districts they attack. Where, as here, "plaintiffs' alleged harm is the dilution of their votes, that injury is district specific." *Gill*, 138 S. Ct. at 1930. Plaintiffs may assert a "right not to be placed in legislative districts deliberately designed to 'waste' their votes in elections

7

where their chosen candidates will win in landslides (packing) or are destined to lose by closer margins (cracking)," but in either case, any injury to an individual voter "results from the boundaries of the particular district in which he resides." *Id.* Thus, any remedy "lies in the revision of the boundaries of the individual's own district." *Id.*[3]

This is in keeping with Supreme Court precedent restricting standing to bring related redistricting claims. In a "racial gerrymandering" case, for example, a voter does not have Article III standing to challenge a map "in its entirety." *United States v. Hays*, 515 U.S. 737, 746 (1995). Establishing "individualized harm" requires showing that the "plaintiff resides in a racially gerrymandered district." *Id.* at 744–45. "On the other hand, where a plaintiff does not live in such a district, he or she does not" have standing, unless there is some other basis for concluding "that the plaintiff has personally been subjected to a racial classification." *Id.* at 745; *see also Sinkfield v. Kelley*, 531 U.S. 28, 30 (2000) (per curiam). "A racial gerrymandering claim" must proceed "district-by-district," and courts do not analyze the State "as an undifferentiated 'whole.'" *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015); *accord Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 800 (2017).

Plaintiffs disregard this limitation on standing. The disconnect between the districts in which Plaintiffs reside and the districts they challenge creates bizarre results. For example, one Plaintiff resides in a district Plaintiffs do not challenge. Plaintiff Solis resides in CD 33, *see* ECF 1 ¶ 26, where, according to the complaint, "[n]on-white voters have a reasonable opportunity to elect their candidates of choice," *id.* ¶ 81.

On the flip side, Plaintiffs challenge a number of districts in which no Plaintiff resides. They seem to challenge "nine districts" in "South and West Texas," ECF 1 ¶ 67, but no Plaintiff resides in

---

[3] Voto Latino faces the same restrictions. An entity plaintiff "may not step into the shoes of its members to bring a statewide claim because its members would lack standing as individual plaintiffs to challenge the apportionment plan on a statewide basis." *League of Women Voters of Mich. v. Johnson*, No. 2:17-cv-14148, 2018 WL 10483517, at *6 (E.D. Mich. May 16, 2018) (three-judge district court).

8

five of them: CDs 15, 20, 28, 34, or 35. *See id.* ¶¶ 73–75, 78–79. In the Dallas–Fort Worth area, Plaintiffs seem to challenge six unspecified districts. *See id.* ¶ 81 (alleging that there are "nine" districts in the "core" of DFW and that "just three of those" give minority voters "a reasonable opportunity to elect their candidates of choice"). But only two of those challenged districts are home to an Individual Plaintiff: CDs 12 and 25. *See id.* ¶¶ 20, 24, 83. And in the Houston area, Plaintiffs seem to challenge CDs 2, 29, 36, and 38, *see id.* ¶¶ 82, 87–88, but no Plaintiff resides in CDs 2 or 29. Plaintiffs should be limited to challenging, at most, districts in which they reside.[4]

## II.     Plaintiffs Do Not Have a Private Cause of Action

Plaintiffs' claim should be dismissed for an additional reason: Section 2 does not give them a private cause of action. Plaintiffs presumably believe that they have an implied cause of action, but they are wrong.

The Supreme Court has never decided whether Section 2 contains an implied private cause of action. It has often "[a]ssum[ed], for present purposes, that there exists a private right of action to enforce" Section 2, but it has never so held. *City of Mobile v. Bolden*, 446 U.S. 55, 60 (1980) (plurality). Decisions that "never squarely addressed the issue," but "at most assumed" an answer, are not binding "by way of *stare decisis*." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see also Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004). Thus, whether "the Voting Rights Act furnishes an implied cause of action under § 2" is "an open question." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring).

---

[4] Plaintiffs attempt to challenge some districts by alleging that an Individual Plaintiff resides in a neighboring district that was affected the configuration of the challenged district. *See* ECF 1 ¶ 69 (CD 16 allegedly affecting CD 23); *id.* ¶ 76 (CD 34 allegedly affecting CD 27); *id.* ¶ 78 (CD 35 allegedly affecting CDs 21, 23, and 27); *id.* ¶ 79 (CD 20 allegedly affecting CD 23). This they cannot do. If a Plaintiff's challenge to his own district requires a remedy affecting a neighboring district, that is one thing. But a Plaintiff cannot bootstrap standing to challenge his own district into a free-standing challenge to a neighboring district. *See, e.g.*, *Gill*, 138 S. Ct. at 1931 (explaining that "[r]emedying the individual voter's harm . . . does not necessarily require restructuring all of the State's legislative districts" but "revising only such districts as are necessary to reshape the voter's district— so that the voter may be unpacked or uncracked, as the case may be").

Answering that question requires analyzing whether Congress created a private cause of action in Section 2, despite its failure to say so in statutory text. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Unless Congress expresses that intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

To be sure, there was a time when federal courts "assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). But that time has passed. Since jettisoning the "*ancien regime*," *id.*, the Supreme Court has "not returned to it." *Sandoval*, 532 U.S. at 287. As a result, courts no longer rely "on pre-*Sandoval* reasoning." *Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018).

Under *Sandoval*, Section 2 does not confer a private cause of action on Plaintiffs. It contains no indication of a congressional intent to create a private right, much less a private remedy.

"Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289 (quotation omitted). Section 2's text focuses on the governmental officials it regulates, not individual voters: "No voting qualification or prerequisite to voting or standard, practice, or procedure s*hall be imposed or applied by any State or political subdivision* in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ." 52 U.S.C. § 10301(a) (emphasis added). Because it "is framed in terms of the obligations imposed on the regulated party" (government officials)—while voters are "referenced only as an object of that obligation"—Section 2 does not create a private right. *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163,

1171 (9th Cir. 2013). Language "framed as an instruction to the regulated entity, rather than to the person protected," does "not indicate a congressional intent to make a remedy available to private litigants." *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 616 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (per curiam).

Although Section 2 refers to "the right . . . to vote," 52 U.S.C. § 10301(a), it does not contain any "'rights-creating' language." *Sandoval*, 532 U.S. at 288. The underlying right to vote to which Section 2 refers is based on state law, *see Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9 (1982), and the Fifteenth Amendment. Because referring to a right is not the same as creating one, Section 2 does not create a federal right "in [the] clear and unambiguous terms" that precedent requires. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002).

In addition, other provisions of the VRA make clear that Section 2 does not create a private remedy. The statute authorizes civil and criminal enforcement actions by the federal government. *See* 52 U.S.C. § 10308. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. "Courts should presume that Congress intended that the enforcement mechanism provided in the statute be exclusive." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc).

To be sure, fractured opinions have suggested, in *dicta*, that Section 2 impliedly creates a private cause of action. *See Morse v. Republican Party of Va.*, 517 U.S. 186, 232–33 (1996) (minority opinion of Stevens, J.) (quoting legislative history and discussing "a right to vote"); *id.* at 240 (Breyer, J., concurring in the judgment) (similar). But those opinions are inconsistent with the later majority opinion in *Sandoval*, which limited its "search for Congress's intent [to] the text and structure of" the statute. 532 U.S. at 288. "[D]ecisions before *Sandoval* frequently implied private rights of action without rigorous analysis; they did so by making a somewhat cursory inspection of the statute and its legislative history." *Conservation Force*, 190 F. Supp. 3d at 616. They "are not binding nor persuasive." *Id.* Thus,

courts in the Fifth Circuit refuse to rely "on pre-*Sandoval* reasoning." *Stokes*, 887 F.3d at 205 (quoting *Conservation Force*, 190 F. Supp. 3d at 616).

That other provisions of the VRA contain implied private causes of action is irrelevant. In *Allen v. State Board of Elections*, for example, the Supreme Court held that Section 5 of the Voting Rights Act created a private cause of action because it was "passed to protect a class of citizens," that is, voters. 393 U.S. 544, 557 (1969). But *Allen* did not consider Section 2, and in determining whether a statute creates implied causes of action, each provision must be considered separately. *See, e.g.*, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576–78 (1979) (rejecting an implied cause of action under Section 17(a) of the Securities Exchange Act of 1934 despite *Borak* earlier inferring one under Section 14(a) of the same act). In any event, the Supreme Court has rejected *Allen's* loose, legislative-history-based approach, *see Sandoval*, 532 U.S. at 287, even listing *Allen* as an example of the now-abandoned "*ancien regime*," *Abbasi*, 137 S. Ct. at 1855.

In the alternative, even if Section 2 implied a private cause of action, it would apply only to voters, not Plaintiffs here. An implied private cause of action is limited to "a particular class of persons." *Sandoval*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)). Neither Voto Latino, which cannot vote, nor the Individual Plaintiffs, who do not allege that they intend (or even want) to vote, are included in "any particular class of beneficiaries whose welfare Congress intended to further" under Section 2. *California*, 451 U.S. at 294. They are not mentioned in the statute at all. Section 2 therefore does not confer rights on them "in clear and unambiguous terms." *Delancey v. City of Austin*, 570 F.3d 590, 593 (5th Cir. 2009) (quotation omitted).

## CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction or failure to state a claim.

| | |
|---|---|
| Date: November 16, 2021 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | */s/ William T. Thompson*<br>WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Tex. State Bar No. 24088531 |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>will.thompson@oag.texas.gov |

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 16, 2021, and that all counsel of record were served by CM/ECF.

*/s/ William T. Thompson*
WILLIAM T. THOMPSON

13