**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| VOTO LATINO, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| JOHN SCOTT, | § | Case No. 1:21-cv-965-RP-JES-JVB |
| *in his official capacity as Texas Secretary of State,* | § | |
| and | § | |
| GREGORY WAYNE ABBOTT, | § | |
| *in his official capacity as the Governor of Texas*, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' COMBINED RESPONSE TO PLAINTIFFS' MOTION FOR**
**RECONSIDERATION AND REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO CONSOLIDATE**

# TABLE OF CONTENTS

Table of Contents .................................................................................................................. ii

Table of Authorities .............................................................................................................. iii

Introduction .......................................................................................................................... 1

Argument ............................................................................................................................... 1

   I.   The Order Convening the Three-Judge Panel Was Proper ................................. 2

   II.  Consolidation under Rule 42 is Appropriate Even if a Three-Judge Panel is Not Required Here ............................................................................................................ 4

      A.  These Cases Should Be Consolidated ................................................................. 4

      B.  This Action is Before the "Same Court" as the *LULAC* Action ....................... 6

      C.  Consolidation is Otherwise Proper and Efficient ............................................. 13

   III. Plaintiffs Ignore the First-to-File Rule .......................................................... 15

Conclusion ............................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott v. Perez,*
   138 S. Ct. 2305, 2313 (2018) ..................................................................................7

*Agre v. Wolf,*
   284 F. Supp. 3d 591, 713 (E.D. Pa. 2018) .............................................................11

*Ala. Legislative Black Caucus v. Alabama,*
   988 F. Supp. 2d 1285, 1306 (N.D. Ala. 2013) .......................................................12

*Arbaugh v. Y&H Corp.,*
   546 U.S. 500, 514–16 (2006) .................................................................................10

*Backus v. South Carolina,*
   857 F. Supp. 2d 553, 558 (D.S.C. 2012) ................................................................11

*Beare v. Smith,*
   321 F. Supp. 1100, 1101–02 (S.D. Tex. 1971)..........................................................3

*Bramlet v. Wilson,*
   495 F.2d 714, 716 (8th Cir. 1974) ............................................................................2

*Brown v. Plata,*
   563 U.S. 493, 500 (2011) .........................................................................................9

*Carrigan v. Sunland-Tujunga Tel. Co.,*
   263 F.2d 568, 572 (9th Cir. 1959) ..........................................................................12

*David v. Signal Int'l, LLC,*
   No. 2:08-cv-1220, 2015 WL 3603944, at *1 (E.D. La. June 4, 2015) ...................15

*Dondi Props. Corp. v. Commerce S&L Ass'n,*
   121 F.R.D. 284 (N.D. Tex. 1988) ...........................................................................10

*Fair Maps Texas Action Committee v. Abbott,*
   No. 1:21-cv-1038, ECF 1 (W.D. Tex. Nov. 16, 2021).............................................16

*Fort Bend County v. Davis,*
   139 S. Ct. 1843, 1850–51 (2019) ............................................................................10

*Frank v. Walker,*
   819 F.3d 384, 387 (7th Cir. 2016) (Easterbrook, J.) ................................................... 2

*Frazier v. Garrison I.S.D.,*
   980 F.2d 1514, 1531 (5th Cir. 1993) ..........................................................................13

*Gill v. Whitford,*
   138 S. Ct. 1916, 1924 (2018) ....................................................................................... 8

*Grynberg Prod. Corp. v. British Gas, PLC,*
   817 F. Supp. 1338, 1353–54 (E.D. Tex. 1993) ........................................................... 4

*Gutierrez v. Abbott,*
   No. 1:21-cv-769, ECF 16 at 2 (W.D. Tex. Sept. 30, 2021) ..................................... 7, 8

*Hamer v. Neighborhood Hous. Services of Chi.,*
   138 S. Ct. 13, 17 (2017) ..............................................................................................13

*Hart v. Kennedy,*
   314 F. Supp. 823, 824 (W.D. Okla. 1969) ..................................................................13

*Hicks v. Miranda*
   422 U.S. 332, 338 n.5 (1975) ......................................................................................10

*Holmes v. City of San Antonio,*
   No. 5:21-cv-274, 2021 WL 2878551, at *1 (W.D. Tex. Mar. 30, 2021)......................13

*Homoki v. Conversion Servs., Inc.,*
   717 F.3d 388, 402 (5th Cir. 2013) ................................................................................ 3

*Hunt v. Washington State Apple Advertising Commission,*
   432 U.S. 333 (1977) ....................................................................................................11

*In re Carter,*
   618 F.2d 1093, 1101 (5th Cir. 1980) ............................................................................ 4

*In re Dearborn Marine Serv., Inc.,*
   499 F.2d 263, 270–71 (5th Cir. 1974) .......................................................................... 8

*Jacobs v. Tawes,*
   250 F.2d 611, 614 (4th Cir. 1957) ........................................................................ 10, 12

*Jehovah's Witnesses in State of Wash. v. King Cnty. Hosp. Unit No. 1 (Harborview),*
   278 F. Supp. 488, 493 (W.D. Wash. 1967) (per curiam)............................................13

*Johnson v. City of Shelby*
   574 U.S. 10, 11 (2014) (per curiam) ............................................................................ 2

*Kentucky v. Graham*,
  473 U.S. 159, 166 (1985) ...............................................................................................14

*Lester v. Exxon Mobil Corp.*,
  879 F.3d 582, 592 (5th Cir. 2018) ...................................................................................1

*LULAC v. Abbott*, No. 3:21-cv-259
  ECF 1 at ¶¶ 111–12 (W.D. Tex. Oct. 18, 2021) .............................................................4
  ECF 7 at 5–6, 8–9 (W.D. Tex. Nov. 10, 2021) ...............................................................6
  ECF 9 at 2 (W.D. Tex. Nov. 10, 2021) .........................................................................7, 8
  ECF 14 at 10 (W.D. Tex. Nov. 15, 2021) ........................................................................6

*LULAC v. N.E. Indep. Sch. Dist.*,
  903 F. Supp. 1071, 1093 (W.D. Tex. 1995) ....................................................................3

*LULAC v. Perry*,
  548 U.S. 399, 409 (2006) .................................................................................................8

*MALC v. Texas*,
  No. 1:21-cv-988, ECF 1 ¶¶ 233–35 (W.D. Tex. Nov. 3, 2021)......................................4

*Page v. Bartels*,
  248 F.3d 175, 190–91 (4th Cir. 2001)..............................................................................5

*Patino v. City of Pasadena*,
  230 F. Supp. 3d 667, 682–83 (S.D. Tex. 2017) ...............................................................3

*Perez v. Abbott*,
  253 F. Supp. 3d 864, 888, 906 (W.D. Tex. 2017) ...........................................................3

*Perez v. Texas*,
  No. 5:11-cv-360-OLG-JES-XR, ECF 23 (W.D. Tex. July 6, 2011)................................4

*Perry v. Perez*,
  565 U.S. 388, 391, 399 (2012).....................................................................................7, 8

*Plata v. Schwarzenegger*,
  No. 4:01-cv-1351, 2009 WL 2710323, at *1 (N.D. Cal. Aug. 26, 2009)......................12

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154, 161 (2010) ...............................................................................................13

*Remick Music Corp. v. Interstate Hotel Co.*,
  58 F. Supp. 523, 542 (D. Neb. 1944)..............................................................................13

*Rosso v. Commonwealth of Puerto Rico*,
  226 F. Supp. 688, 690 (D.P.R. 1964) .............................................................................12

*Russell v. Hathaway*,
    423 F. Supp. 833, 835 (N.D. Tex. 1976) ...............................................................12

*Shapiro v. McManus*,
    577 U.S. 39, 43 (2015).............................................................................................. 8, 9

*Skinner v. Switzer*,
    562 U.S. 521, 530 (2011) ...............................................................................................2

*Smith v. U.S. Civil Serv. Comm'n*,
    520 F.2d 731, 733 (7th Cir. 1975) ........................................................................ 10, 11

*Sterling v. Constantin*,
    287 U.S. 378, 393–94 (1932) ........................................................................................4

*Sutter Corp. v. P&P Indus., Inc.*,
    125 F.3d 914, 920 (5th Cir. 1997) ...............................................................................15

*Thomas v. Reeves*,
    961 F.3d 800, 803 n.2 (5th Cir. 2020) (en banc) (Costa, J., concurring)........................ 5, 11

*Thompson v. Allstate Ins. Co.*,
    476 F.2d 746, 749 (5th Cir. 1973) .................................................................................2

*Topchian v. JPMorgan Chase Bank, N.A.*,
    760 F.3d 843, 849 (8th Cir. 2014) .................................................................................2

*Van Buskirk v. Wilkinson*,
    216 F.2d 735, 737 (9th Cir. 1954) .................................................................... 10, 11, 12

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252, 266–68 (1977) ........................................................................................3

*Weir v. United States*,
    310 F.2d 149, 151 (8th Cir. 1962) ........................................................................ 10, 11

*White v. Peco Foods, Inc.*,
    546 F. Supp. 2d 339, 343 (S.D. Miss. 2008) ...............................................................15

*Wilson v. Gooding*
    431 F.2d 855, 858 (5th Cir. 1970) ...............................................................................10

*Wilson v. Texas*,
    No. 1:21-cv-943, ECF 10 at 3 (W.D. Tex. Nov. 12, 2021) ..................................................14

*Yeti-Coolers, LLC v. Beavertail Prods., LLC*,
    No. 1:15-cv-415, 2015 WL 4759297, at *1–2 (W.D. Tex. Aug. 12, 2015) (Pitman, J.) ......................5

**Statutes**

28 U.S.C. § 292(b) ........................................................................................................8

28 U.S.C. § 132 .............................................................................................................7

28 U.S.C. § 1331 .........................................................................................................11

28 U.S.C. § 1404 .........................................................................................................14

28 U.S.C. § 1861 ...........................................................................................................8

28 U.S.C. § 1863(b)(3) .................................................................................................8

28 U.S.C. § 2284 ...................................................................................................passim

28 U.S.C. § 291(b) .....................................................................................................8, 9

28 U.S.C. § 451 .............................................................................................................7

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law* 56 (2012) ........................................9

**Rules**

Fed. R. Civ. P. 8(a) .......................................................................................................2

Fed. R. Civ. P. 42 ..................................................................................................passim

Fed. R. Civ. P. 54(c) .....................................................................................................2

## INTRODUCTION

Chief Judge Owen was correct to convene a three-judge court in response to Judge Pitman's request. The complaint properly triggers 28 U.S.C. § 2284 because it pleads facts relevant to a constitutional claim, even if it does not expressly enumerate such a count. For this reason, Plaintiffs' Motion for Reconsideration should be denied.

Moreover, regardless of whether this case would independently justify convening a three-judge court, it can and should be consolidated under Rule 42 before one of the already-convened three-judge courts. Three-judge courts hear Voting Rights Act claims together with constitutional claims every redistricting cycle. This makes sense given the understanding that constitutional and statutory reapportionment claims are "inextricably intertwined." Here, the claims are not only intertwined, they are identical. Just like Plaintiffs here, the plaintiffs in *LULAC v. Abbott* and *MALC v. Texas* challenge the State of Texas's new congressional districts under Section 2 of the VRA.

There are no procedural or substantive bars to consolidation. The Court can consolidate under Rule 42 because all relevant cases are pending before the same court (the Western District of Texas) and no jurisdictional limits prevent three-judge district courts from hearing Plaintiffs' statutory claim. But even if that were in doubt, Plaintiffs offer no argument against consolidation under the first-to-file rule. To conserve judicial resources, ensure decisional consistency, and prevent potentially inconsistent injunctive relief, these cases should be consolidated.[1]

## ARGUMENT

A three-judge court should decide this case for three independent reasons. First, Plaintiffs'

---

[1] Pursuant to the first-to-file rule, Defendants filed their motion to consolidate in the *LULAC* case rather than this case and understand the motion to be before that panel rather than this one. But in deference to the Court's order that Defendants "includ[e] their arguments in reply" regarding that motion in this filing, Defendants have included them here. In any event, "[a] district court is permitted to order consolidation pursuant to Federal Rule of Civil Procedure 42(a) *sua sponte.*" *Lester v. Exxon Mobil Corp.*, 879 F.3d 582, 592 (5th Cir. 2018). Defendants do not oppose consolidation before this Court or one of the other three-judge courts. Defendants goal is to ensure that all of the redistricting cases, including this case, are consolidated together before one court, whichever court that might be.

complaint implicitly raises a constitutional claim that requires a three-judge district court. Second, even if this case otherwise belonged in front of a single judge, it would warrant consolidation under Rule 42. Third, the first-to-file rule supports consolidation—which Plaintiffs do not dispute.

## I.      The Order Convening the Three-Judge Panel Was Proper

A three-judge district court is proper because, as Chief Judge Owen and Judge Pitman have already concluded, "[t]his suit challenges the constitutionality of the apportionment of Texas congressional districts." ECF 13. A three-judge court "shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284(a).

Plaintiffs insist that they "bring no constitutional claims," ECF 14 at 1, but the test for whether a complaint presents a claim is not whether it is specified in a list of counts. "[A] complaint need not pin [a] plaintiff's claim for relief to a precise legal theory" or contain "an exposition of [a plaintiff's] legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). It need not even ask for the relief Court ultimately issues. *See* Fed. R. Civ. P. 54(c). Rather, the test is whether the complaint alleges facts that give rise to a claim for relief. *See* Fed. R. Civ. P. 8(a). So long as a complaint "narrate[s] a plausible grievance," it raises a claim, even if it does "not set out a legal theory or cite authority." *Frank v. Walker*, 819 F.3d 384, 387 (7th Cir. 2016) (Easterbrook, J.). Even when a complaint "suggest[s] one legal theory on which [the plaintiff] could prevail," it "is sufficient if the plaintiff is entitled to relief under *any* legal theory." *Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 749 (5th Cir. 1973) (emphasis added). That is because "the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (quoting *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)).

In *Johnson v. City of Shelby*, for example, the complaint plausibly alleged facts that could support a Section 1983 claim, but the lower courts ruled against the plaintiffs "for failure to invoke [Section] 1983, in their complaint." 574 U.S. 10, 10 (2014) (per curiam). The Supreme Court summarily reversed.

*Id.* at 11. If a complaint includes sufficient "*factual* allegations," the plaintiffs are "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id.* at 12; *see also Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013).

Under these standards, Plaintiffs' complaint raises an equal-protection claim. It spends twenty-two paragraphs discussing "Texas's History of Discrimination," ECF 1 ¶¶ 93–114, and another twenty-four paragraphs discussing how SB 6 was passed, including discussions of legislative history and alleged procedural and substantive irregularities in the process, *id.* ¶¶ 41–64. Those allegations are relevant to a discriminatory-intent claim under the Equal Protection Clause. *See, e.g., LULAC v. N.E. Indep. Sch. Dist.*, 903 F. Supp. 1071, 1093 (W.D. Tex. 1995). They align with the factors the Supreme Court has expressly identified for inferring discriminatory intent: (1) "[t]he historical background," (2) "[t]he specific sequence of events leading up to the challenged decision," (3) "[d]epartures from the normal procedural sequence," (4) "[s]ubstantive departures," and (5) "legislative or administrative history." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977). Plaintiffs included a number of allegations expressly about "intentional discrimination" and "discriminatory purpose." ECF 1 ¶ 102–04; *see also id.* ¶ 99. They even cite a series of cases discussing intentional discrimination and constitutional claims. *See, e.g., id.* ¶ 94 (citing *Patino v. City of Pasadena*, 230 F. Supp. 3d 667, 682–83 (S.D. Tex. 2017); *Perez v. Abbott*, 253 F. Supp. 3d 864, 888, 906 (W.D. Tex. 2017)); *id.* ¶ 99 (citing *Beare v. Smith*, 321 F. Supp. 1100, 1101–02 (S.D. Tex. 1971)).

That the only formal count of the complaint refers to "Section 2 of the Voting Rights Act" is not dispositive. *Id.* ¶ 128. The court "should inspect the complaint carefully to determine whether a [constitutional] claim is necessarily presented, even if the plaintiff has couched his pleading solely in terms of [statutory] law. The reviewing court looks to the substance of the complaint, not the labels used in it." *Grynberg Prod. Corp. v. British Gas, PLC*, 817 F. Supp. 1338, 1353–54 (E.D. Tex. 1993) (quoting *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980)) (denying motion to remand despite petition's

statement that "no claims are asserted under federal law").

Because Plaintiffs allege facts giving rise to a constitutional challenge to Texas's new congressional districts, a three-judge panel is not just proper, but mandatory.

## II. Consolidation under Rule 42 is Appropriate Even if a Three-Judge Panel is Not Required Here

Consolidation is appropriate under Rule 42. Without consolidation, both Defendants and the federal courts will be burdened with duplicative litigation seeking inconsistent injunctions. Plaintiffs' response—that federal courts lack the power to consolidate cases like this—does not hold water.

### A. These Cases Should Be Consolidated

This case asks the Court to decide one of the same exact issues that will be decided in the other redistricting cases: Whether Texas's congressional map violates Section 2 of the VRA. *See* ECF 1 at ¶¶ 127–36; *LULAC v. Abbott*, No. 3:21-cv-259, ECF 1 at ¶¶ 111–12 (W.D. Tex. Oct. 18, 2021); *MALC v. Texas*, No. 1:21-cv-988, ECF 1 ¶¶ 233–35 (W.D. Tex. Nov. 3, 2021). No one contests that the *MALC* case should not be consolidated into the *LULAC* case. Nor could they. Redistricting cases such as those are consolidated all the time. *See, e.g.*, *Perez v. Texas*, No. 5:11-cv-360, ECF 23 (W.D. Tex. July 6, 2011); *see also id.* ECF 63, 72, 76 (adding further parties). Plaintiffs effectively argue that a three-judge court can hear every Section 2 challenge to Texas's congressional districts except theirs. If Plaintiffs are right, multiple courts will simultaneously decide the same exact issue, wasting judicial resources and potentially exposing Defendants to conflicting injunctive relief. Fortunately, Plaintiffs are wrong. This case can and should be consolidated with the others.

A three-judge court is fully capable of adjudicating statutory redistricting claims along with constitutional claims. *See, e.g.*, *Sterling v. Constantin*, 287 U.S. 378, 393–94 (1932) (explaining that a three-judge court convened because of one question can nonetheless decide "every question involved, whether of state or federal law" and "rest its judgment on the decision of such of the questions as in its opinion effectively dispose of the case"). In fact, Section 2284 contemplates that three-judge courts

will do so: "[T]he legislative history of the 1976 revisions to 28 U.S.C. § 2284 clearly demonstrates that Congress was concerned less with the *source* of the law on which an apportionment challenge was based than on the unique importance of apportionment cases generally." *Page v. Bartels*, 248 F.3d 175, 190–91 (4th Cir. 2001). Three-judge courts rightly hear constitutional and statutory reapportionment claims together because the core of such claims is the same: that a State drew its electoral maps such they violate an individual's voting rights. For this reason, when a plaintiff "brings both constitutional and statutory challenges, the constitutional hook for three-judge courts sweeps in the statutory claim." *Thomas v. Reeves*, 961 F.3d 800, 803 n.2 (5th Cir. 2020) (en banc) (Costa, J., concurring) (citing *Page*, 248 F.3d at 191). Such claims must be decided together because "questions regarding the legitimacy of an apportionment scheme, whether under the Constitution or under the Voting Rights Act of 1965, are intimately related." *Page*, 248 F.3d at 190.

Moreover, three-judge courts *must* consider constitutional and statutory redistricting claims together to avoid inconsistent decisions on the merits and inconsistent relief. "Under a scheme in which a single district judge can legitimately adjudicate the merits of a Voting Rights Act challenge (while leaving resolution of the Fourteenth and Fifteenth Amendment claims to a three-judge court), two tribunals would be considering closely similar, albeit not perfectly identical, challenges to the same state government action." *Page*, 248 F.3d at 190. Not only is that configuration "unnecessarily redundant," it also threatens to disrupt "a state's internal political structure." *Id.*

In the Motion to Consolidate, Defendants explained the risk of inconsistent adjudications, and why statewide redistricting cases "call for a uniform result." *Yeti-Coolers, LLC v. Beavertail Prods., LLC*, No. 1:15-cv-415, 2015 WL 4759297, at *1–2 (W.D. Tex. Aug. 12, 2015) (Pitman, J.); *see* Defs.' Partially Opposed Mot. to Consolidate, *LULAC v. Abbott*, No. 3:21-cv-259, ECF 7 at 5–6, 8–9 (W.D. Tex. Nov. 10, 2021) (Mot. to Consolidate). Among other reasons, there are four challenges to Texas's congressional districts. Left unconsolidated, any relief issued in one case could potentially conflict with

the relief issued in another. Plaintiffs dismiss this concern, insisting that "there is no realistic prospect of inconsistent relief" because "the two cases are complementary." *LULAC v. Abbott*, No. 3:21-cv-259, ECF 14 at 10 (W.D. Tex. Nov. 10, 2021) (Resp.). But Plaintiffs immediately undercut their own position by conceding that they seek four additional Latino-majority districts while the *LULAC* Plaintiffs seek two. *Id.* This cuts *in favor* of consolidation, not against. First, if two maps were drawn as the two sets of Plaintiffs request, they would necessarily conflict. That is, a map creating two additional Latino-majority districts would be plainly inconsistent with a map creating four such districts. Second, even if there were some way to iron out the differences between two decisions, it would presumably have to happen in a joint hearing involving all of the parties and judges, or in other words, after consolidation. Indeed, Plaintiffs concede that this would require "coordination within the judiciary." Resp. 10. Third, the fact that two sets of plaintiffs both want more Latino-majority districts does not mean their interests are wholly aligned. If history is any guide, a plaintiff who believes only two additional districts are possible will likely oppose going beyond that for fear it would leave existing districts insufficiently safe. And a plaintiff who believes four additional districts are possible, will likely oppose stopping short of that for fear it would leave existing districts unlawfully "packed."

Put simply, Plaintiffs fail to address the fundamental concern that constitutional and statutory apportionment claims must be decided together. Indeed, they concede that their claims and those asserted in the other cases are complementary. Their only real defense is a series of technical arguments that would leave the federal courts powerless to consolidate litigation, regardless of the efficiencies or equities. As explained below, federal courts are not powerless to prevent duplicative litigation.

## B.    This Action is Before the "Same Court" as the *LULAC* Action

These cases can be consolidated under Rule 42 because they are before the same court: the United States District Court for the Western District of Texas. Plaintiffs contend "that a three-judge district court convened pursuant to [Section 2284] is *an entirely separate court* from the ordinary district

court in which the case was originally filed." Resp. 7 (emphasis added). But that contradicts the way redistricting cases have always proceeded and the very structure of the federal courts.

Courts consistently recognize that a "district court of three judges" convened under Section 2284 operates as a part of the United States District Court for the Western District of Texas. 28 U.S.C. § 2284(a). For example, the Order setting Defendants' deadline for filing this response, which was entered "on behalf of the Three-Judge Panel," includes the following heading:

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ECF 19 at 1–2. The same is true for orders entered by the other three-judge panels. *See, e.g.*, Order, *LULAC v. Abbott*, No. 3:21-cv-259, ECF 9 at 2 (W.D. Tex. Nov. 10, 2021); Order, *Gutierrez v. Abbott*, No. 1:21-cv-769, ECF 16 at 2 (W.D. Tex. Sept. 30, 2021). Even Plaintiffs bow to this reality, including the same heading on their motion for reconsideration. *See* ECF 14.

The Supreme Court agrees. In the last redistricting cycle, for example, the Supreme Court repeatedly equated the three-judge district court convened under Section 2284 and the United States District Court for the Western District of Texas. It referred to the "three-judge court in the Western District of Texas." *Abbott v. Perez*, 138 S. Ct. 2305, 2313 (2018). It reviewed the orders of "the District Court for the Western District of Texas." *Perry v. Perez*, 565 U.S. 388, 391, 399 (2012) (per curiam); *accord id.* (Thomas, J., concurring in the judgment) ("the United States District Court for the Western District of Texas").

This is in keeping with the statutory text. "A district court of three judges" is, like it sounds, , a district court. 28 U.S.C. § 2284. Plaintiffs concede as much. *See, e.g.*, Resp. 6. Every district court established in Title 28 is "constituted by chapter 5 of [that] title." 28 U.S.C. § 451 (defining "district court"). Chapter 5 provides that "[t]here shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district." 28 U.S.C. § 132. Thus,

7

each district court is necessarily assigned to a particular judicial district. There are no district courts "entirely separate" from the ordinary district courts constituted by Chapter 5. Resp. 7.

That means the three-judge district court must be part of some ordinary district court and some ordinary judicial district. "Texas is divided into four judicial districts": "the Northern, Southern, Eastern, and Western Districts of Texas." *Id.* § 124. No one contends that the three-judge court is part of the Northern, Southern, or Eastern Districts. That leaves only one option: the Western District—the same district identified at the top of the Court's orders. And "[d]istrict courts have broad discretion under [Rule 42] to consolidate causes pending in the *same district*." *In re Dearborn Marine Serv., Inc.*, 499 F.2d 263, 270–71 (5th Cir. 1974) (emphasis added).

Plaintiffs argue that Section 2284 refers to "a 'district *court* of three judges,' not as a mere 'panel' of an existing court," Resp. 6, but they erroneously assume those terms always refer to separate entities. To the contrary, courts applying Section 2284 routinely use "three-judge panel" and "three-judge court" interchangeably. *E.g.*, *LULAC v. Perry*, 548 U.S. 399, 409 (2006). Again, in the last round of Texas redistricting, the Supreme Court explained that "[a] three-judge *panel* of the United States District Court for the Western District of Texas was convened." *Perry*, 565 U.S. at 391 (citing 28 U.S.C. § 2284) (emphasis added). That is consistent with other Supreme Court precedent. *See, e.g.*, *Gill v. Whitford*, 138 S. Ct. 1916, 1924 (2018) ("[a] three-judge panel of the District Court"); *Shapiro v. McManus*, 577 U.S. 39, 43 (2015) ("the process for appointment of a three-judge panel"). Indeed, in this and related litigation, orders are routinely entered "on behalf of the Three-Judge Panel." *E.g.*, ECF 19; Order, *LULAC v. Abbott*, No. 3:21-cv-259, ECF 9 at 2 (W.D. Tex. Nov. 10, 2021); Order, *Gutierrez v. Abbott*, No. 1:21-cv-769, ECF 16 at 2 (W.D. Tex. Sept. 30, 2021).

Plaintiffs' argument that a court is not "convened" when a "mere 'panel'" is assembled also contradicts congressional usage. Resp. 6. For example, a district court "convenes" in a particular "division" even though that division does not include every district judge. 28 U.S.C. § 1861; *accord id.*

§ 1863(b)(3). And a single judge can "hold a district court" even though many members of that district court are not involved. *Id.* §§ 291(b), 292(b). Plaintiffs seem to believe that Congress could not have possibly used "[a] district court of three judges" to refer to part of an ordinary district court. *Id.* § 2284(a). But courts frequently use an analogous term—"single-judge district court"—without suggesting that an entirely new court was created apart from the ordinary district court. *E.g.*, *Shapiro*, 577 U.S. at 44; *Brown v. Plata*, 563 U.S. 493, 500 (2011).

Next, Plaintiffs suggest that the involvement of the chief judge of the *circuit* and the presence of a *circuit* judge proves that a three-judge court cannot be part of a *district* court, Resp. 6, but that underestimates the flexibility of the federal judicial system. Congress has authorized "[t]he chief judge of a circuit" to "designate and assign temporarily any circuit judge within the circuit . . . to hold a district court in any district within the circuit." 28 U.S.C. § 291(b). Section 2284 uses the same verb ("designate") and the same procedure: "[T]he chief judge of the circuit . . . shall designate two other judges," who "shall serve as members of the court to hear and determine the action or proceeding." 28 U.S.C. § 2284(b)(1). That is because Section 2284 means to achieve the same result: Judges who do not normally decide cases on behalf of a particular district court are authorized to do so.

Plaintiffs also point to the fact that any review of a one-judge order would be by the three-judge panel, not the entire United States District Court for the Western District of Texas. Resp. 6–7. That just shows that context matters. When a statutory provision (1) provides for a "district court of three judges," (2) refers to actions taken by "a single judge," and (3) provides for review of such actions "by the full court," it is of course referring to the three-judge district court previously discussed in that provision. 28 U.S.C. § 2284(b)(3). That in no way suggests that the three-judge district court is not itself part of the United States District Court for the Western District of Texas. After all, "[e]ach district court shall consist of the district judge *or judges* for the district in regular active service." *Id.* § 132(b) (emphasis added); *cf. Dondi Props. Corp. v. Commerce S&L Ass'n*, 121 F.R.D. 284 (N.D. Tex.

1988). In making this argument, Plaintiffs commit the cardinal sin of insisting that one word means the same thing in every circumstance. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 56 (2012) ("Of course, words are given meaning by their context.").

Finally, Plaintiffs contend that a three-judge district court is governed by its own jurisdictional statute (Section 2284) because it is "entirely separate" from an "ordinary district court," which is subject to ordinary jurisdictional statutes. Resp. 7. That is wrong on both counts. First, Section 2284 is not jurisdictional. In *Hicks v. Miranda*, the Supreme Court did "not deem [a] requirement [in Section 2284] jurisdictional." 422 U.S. 332, 338 n.5 (1975). Various courts of appeals also recognize that "Section 2284 . . . is not jurisdictional." *Weir v. United States*, 310 F.2d 149, 151 (8th Cir. 1962); *accord Smith v. U.S. Civil Serv. Comm'n*, 520 F.2d 731, 733 (7th Cir. 1975) ("not jurisdictional"); *Jacobs v. Tawes*, 250 F.2d 611, 614 (4th Cir. 1957) (same); *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737 (9th Cir. 1954) (same).

Plaintiffs cite *Wilson v. Gooding* but elliptically omit that the case considered a different statute: the now-repealed Section 2281, not the still-relevant Section 2284. *Compare* 431 F.2d 855, 858 (5th Cir. 1970) ("there is no § 2281 jurisdiction"), *with* Resp. 4 ("there is no . . . jurisdiction"). That Congress did not use the word "jurisdiction" and the Supreme Court's increasing reluctance to characterize rules as jurisdictional both weigh against treating Section 2284 as jurisdictional here. *See, e.g.*, *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1850–51 (2019); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514–16 (2006). So too for the fact that Section 2284, by its terms, addresses the circumstances in which to convene a three-judge district court, not which cases or claims an already-convened three-judge district court has power to decide. 28 U.S.C. § 2284(a) ("A district court of three judges *shall be convened when . . .*") (emphasis added); *see also Weir*, 310 F.2d at 151 (Section 2284 "*outlines the procedure* to be used," and does not "limit[]" the "trial court's jurisdiction") (emphasis added). As Judge Costa recently explained, there are good reasons to have "serious doubts that [Section 2284] is jurisdictional." *Thomas*, 961 F.3d at 804

n.5 (Costa, J., concurring).[2]

Second, if three-judge district courts were truly separate courts subject to separate jurisdictional requirements, then the Supreme Court would not review their jurisdiction under the statutes applicable to ordinary district courts. But that is exactly what it did in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977). Reviewing the decision of a three-judge district court convened under Section 2284, *see id.* at 339, the Supreme Court evaluated whether the complaint satisfied the then-extant amount-in-controversy requirement in 28 U.S.C. § 1331 (federal-question jurisdiction), *see id.* at 346–48. That analysis would have been entirely unnecessary if a three-judge district court were not part of an ordinary district court subject to Section 1331. *See also Van Buskirk*, 216 F.2d at 737 (affirming dismissal for failure to satisfy the amount-in-controversy requirement after a request for a three-judge district court under Section 2284). The three-judge court's jurisdiction flows from the federal-question statute, not Section 2284. *See, e.g., Backus v. South Carolina*, 857 F. Supp. 2d 553, 558 (D.S.C. 2012) (three-judge court); *Smith*, 520 F.2d at 733 & n.1 ("Sections 2282 and 2284 are not jurisdictional but procedural. . . . Necessarily they assume jurisdiction in the court under some other statutory provision. . . . The jurisdictional basis for this case must be 28 U.S.C. § 1331."); *Agre v. Wolf*, 284 F. Supp. 3d 591, 713 (E.D. Pa. 2018) (Baylson, J., dissenting) ("Importantly, 28 U.S.C. § 2284 is not the source of jurisdiction for constitutional challenges to apportionment statutes. The Constitution and § 1331 are the source of that jurisdiction.").

Although Plaintiffs do not cite most of these cases, they concede that the Fourth Circuit rejected their position. Resp. 7–8 n.3. "The court of three judges is not a different court from the District Court, but is the District Court composed of two additional judges sitting with the single

---

[2] Judge Costa explained that "the Supreme Court has emphasized in recent years that not all mandatory procedural rules are jurisdictional," that the "word 'jurisdiction' does not appear in section 2284(a)," and that the statute's structure appears to reject the argument that it is jurisdictional. He discounted "[n]onbinding caselaw [that] suggests Section 2284 is jurisdictional." *Thomas*, 961 F.3d at 804 n.5 (Costa, J., concurring) (citing *LULAC of Texas v. Texas*, 318 F. App'x 261, 264 (5th Cir. 2009) (per curiam)).

District Judge before whom the application for injunction has been made." *Jacobs*, 250 F.2d at 614 (citing 28 U.S.C. § 2284). In response, Plaintiffs argue that the Fourth Circuit's ruling was "dictum" issued "without consideration of the statutory text," Resp. 7–8 n.3, but in reality, the Fourth Circuit's reasoning was crucial to its holding, and the opinion quoted the statutory text. *See Jacobs*, 250 F.2d at 614 & n.2. The plaintiff had argued that a single district judge lacked jurisdiction to dismiss the case because Section 2284 required a three-judge district court. The Fourth Circuit rejected that argument because the plaintiff was wrong to suggest that there were two separate courts with two separate jurisdictions. "The court of three judges is not a different court," and Section 2284 is "'not jurisdictional but procedural.'" *Id.* at 614 (quoting *Van Buskirk*, 216 F.2d at 737).

Although Plaintiffs do not acknowledge it, other courts follow the Fourth Circuit's approach. Just two years after the Fourth Circuit decided *Jacobs*, the Ninth Circuit agreed. *See Carrigan v. Sunland-Tujunga Tel. Co.*, 263 F.2d 568, 572 (9th Cir. 1959) (quoting *Jacobs* for the proposition that "[t]he court of three judges is not a different  court from the District Court"); *accord Rosso v. Commonwealth of Puerto Rico*, 226 F. Supp. 688, 690 (D.P.R. 1964) (same). The Fourth Circuit's approach is still good law. *See Ala. Legislative Black Caucus v. Alabama*, 988 F. Supp. 2d 1285, 1306 (N.D. Ala. 2013) (Pryor, J.) ("A three-judge district court is still a district court within the ordinary hierarchical structure of the federal judiciary."); *Plata v. Schwarzenegger*, No. 4:01-cv-1351, 2009 WL 2710323, at *1 (N.D. Cal. Aug. 26, 2009) (citing *Jacobs* and noting a party's failure "to cite any authority for the proposition that the three-judge court is a separate tribunal from this Court"). "As stated by one district judge, 'however constituted, the (three-judge) court . . . was only the District Court for the Federal Judicial District of Nebraska.'" *Russell v. Hathaway*, 423 F. Supp. 833, 835 (N.D. Tex. 1976) (three-judge court) (Higginbotham, J.) (quoting *Remick Music Corp. v. Interstate Hotel Co.*, 58 F. Supp. 523, 542 (D. Neb. 1944)).

In response, Plaintiffs rely on two out-of-circuit district court opinions from the 1960s. *See*

Resp. 7. The first case is an example of a past court using the term "jurisdiction" too loosely.[3] Courts "have sometimes overlooked th[e] distinction" between jurisdictional rules and mandatory claim-processing rules, "mischaracteriz[ing] claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis." *Hamer v. Neighborhood Hous. Services of Chi.*, 138 S. Ct. 13, 17 (2017) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010)). The second case stands for the irrelevant proposition that "[a] three-judge court does not exist until it has been created by the Chief Judge of the Circuit." Resp. 7 (quoting *Hart v. Kennedy*, 314 F. Supp. 823, 824 (W.D. Okla. 1969)). That does nothing to undermine Defendants' argument that a three-judge district court is, once created, part of the ordinary district court.

### C.     Consolidation is Otherwise Proper and Efficient

Plaintiffs also argue that four "other factors" weigh against consolidation. Resp. 9–10. Specifically, they contend that consolidation would prejudice them, that the parties are dissimilar, that consolidation would be inconvenient, and that the prospects for inconsistent adjudication are overstated. Interestingly, these other factors are only relevant to two of the five considerations that are "germane to whether consolidation is appropriate" under Rule 42. *Holmes v. City of San Antonio*, No. 5:21-cv-274, 2021 WL 2878551, at *1 (W.D. Tex. Mar. 30, 2021) (citing *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1531 (5th Cir. 1993)). Those well-established considerations are:

> (1) [W]hether the actions are pending in the same court; (2) whether there are common parties; (3) whether there are common questions of law or fact; (4) whether there is risk of prejudice or confusion versus a risk of inconsistent adjudications if the cases are tried separately; and (5) whether consolidation will promote judicial economy.

*Id.* Plaintiffs effectively concede by omission that these cases involve common questions of law and

---

[3] And its remarks with respect to jurisdiction were concerned with Section 2281, not Section 2284. *See Jehovah's Witnesses in State of Wash. v. King Cty. Hosp. Unit No. 1 (Harborview)*, 278 F. Supp. 488, 493 (W.D. Wash. 1967) (per curiam), *aff'd*, 390 U.S. 598 (1968). In fact, Plaintiffs only asserted Section 2284 as an *alternative* basis for convening a three-judge court, and the statute is only mentioned twice in the decision, with no discussion or analysis. *Id.* at 491, 500.

fact and would be more economically adjudicated together. *See* Mot. to Consolidate 8–10.

Nor are Plaintiffs' arguments on the second and fourth consolidation factors availing. As they concede, Governor Abbott and Secretary Scott, both sued in their official capacities, are common to all cases being considered for consolidation. Resp. 9. The other defendants involved in some, but not all, of the other cases include both the State of Texas itself and other government officials sued in their official capacities, the latter of which is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In other words, the various plaintiffs all seek relief from, practically speaking, the same source.

Plaintiffs also contend that "Defendants' fear of inconsistent relief is overstated," Response at 10, and that "consolidation will prejudice the Voto Latino Plaintiffs by unavoidably slowing down adjudication of their claims," *id.* at 9. Again, what Plaintiffs' neglect to argue is as informative as what they actually argue. Notably, Plaintiffs do not contend that the risk of prejudice outweighs the risk of inconsistent adjudications. Nor could they. The prospect of inconsistent adjudication looms large, as Plaintiffs' own argument demonstrates. *See supra* Part II.A.

Finally, Plaintiffs argue that "consolidation in El Paso rather than Austin is inconvenient" "for the reasons given in the *Wilson* Plaintiffs' response in opposition to Defendants' Motion." Resp. 9. Wilson supports consolidation in Austin. *See Wilson v. Texas*, No. 1:21-cv-943, ECF 10 at 3 (W.D. Tex. Nov. 12, 2021) (arguing "the Court should, *sua sponte*, transfer the venue of *LULAC v. Abbott* and consolidate it with one or another of the several cases pending in the Austin Division of the Western District of Texas"). This Court knows that Defendants originally sought consolidation in Austin. When that was denied, Defendants sought consolidation in El Paso pursuant to the first-to-file rule. But if the Court, like Wilson and apparently the *Voto Latino* Plaintiffs, prefers consolidation in Austin to consolidation in El Paso, that is fine with Defendants. *See supra* n.1.

### III.    Plaintiffs Ignore the First-to-File Rule

Even if Plaintiffs were right about Rule 42—they are not—consolidation would still be proper. As Defendants previously explained, the first-to-file rule provides an independent basis for consolidation. *See* Mot. to Consolidate 4–6. "[T]he 'first to file rule' . . . determines which court may decide the merits of substantially similar cases" even when multiple courts are involved. *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). The rule applies with equal force in cases "where related cases are pending before two judges in the same district . . . as well as where related cases have been filed in different districts." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). Completely ignoring this issue, Plaintiffs' response does not even mention the first-to-file rule. Plaintiffs have therefore forfeited any relevant argument.

The closest Plaintiffs come to a response is arguing that transfer is unavailable under 28 U.S.C. § 1404, but that is both irrelevant and wrong. First, the scope of Section 1404 is irrelevant to any transfer and consolidation under the first-to-file rule. "The first-to-file rule is a distinct procedural mechanism for transferring venue," so courts "routinely distinguish between transfers under Section 1404(a) and transfers under the first-to-file rule." *David v. Signal Int'l, LLC*, No. 2:08-cv-1220, 2015 WL 3603944, at *1 (E.D. La. June 4, 2015) (footnote omitted) (collecting cases). "[A] motion to transfer pursuant to the first-to-file rule does not depend on the presence or absence of the § 1404(a) considerations." *White v. Peco Foods, Inc.*, 546 F. Supp. 2d 339, 343 (S.D. Miss. 2008).

Second, Plaintiffs are wrong about the scope of Section 1404. Their argument would create the absurd result that no case—regardless of whether it supported a three-judge court under Section 2284—could ever be transferred to a pre-existing three-judge court. Plaintiffs focus on Section 1404's requirement that the transferee court be one in which the case "might have been brought." Resp. 8 (quoting 28 U.S.C. § 1404(a)). On Plaintiffs' theory, though, no plaintiff ever brings a case before a three-judge court. Instead, according to Plaintiffs, a three-judge court does not exist until it is "specially

'convened'" after the case has already been brought. Resp. 2 (quoting 28 U.S.C. § 2284). Accepting Plaintiffs' argument would leave the federal judiciary and the parties doomed to duplicative litigation before different courts no matter the procedure followed.

Thus, even if these cases were before two different courts and neither Rule 42 nor Section 1404 applied—contrary to Defendants' arguments above—the cases could still be consolidated under the first-to-file rule. Plaintiffs present no good reason not to follow the first-to-file rule. Indeed, there is none. The Court can and should consolidate these matters.

## CONCLUSION

Defendants respectfully request that Plaintiffs' Motion for Reconsideration be denied and that Defendants' Motion to Consolidate be granted, or, in the alternative, that one of the three-judge courts consolidate this and the other redistricting cases *sua sponte*.[4]

---

[4] A seventh federal redistricting case was filed yesterday in *Fair Maps Texas Action Committee v. Abbott*, No. 1:21-cv-1038, ECF 1 (W.D. Tex. Nov. 16, 2021). Defendants intend to file a motion to consolidate that case before the *LULAC* panel as well. But if the Court finds that consolidation before this panel or one of the other three-judge courts is appropriate, Defendants request that *Fair Maps Texas Action Committee* be included in the order of consolidation.

Date: November 17, 2021

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 17, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN